Receipt # 063007

ORIGINAL

ECF

FILED
JUN 10 2005
U.S. COURT OF FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SULLIVAN MARINA AND CAMPGROUND, L.L.C,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 05- 615C

Judge: ____________

## COMPLAINT

COMES NOW Plaintiff, Sullivan Marina and Campground, L.L.C., ("Sullivan Marina"), through its undersigned counsel, and files this Complaint for Declaratory Judgment against the United States of America acting through the United States Army Corps of Engineers, St. Louis District ("St. Louis District"). In support of its action, Sullivan Marina states as follows:

### Nature of the Action

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 1491 and the Contract Disputes Act, 41 U.S.C. §§ 601-613.

2. This action is a timely appeal of the St. Louis District's final decision revoking seasonal/non-transient camping privileges at eight sites within the area leased to Sullivan Marina for that purpose and setting forth the St. Louis District's interpretation of its contractual authority to supervise and inspect camping activities at Sullivan Marina.

3. Sullivan Marina seeks declaratory relief regarding the proprietary of the St. Louis District's revocation relating to seasonal/non-transient camping.

4. Additionally, Sullivan Marina seeks declaratory relief describing the limits of the St. Louis District's supervisory authority and inspection authority over campsites at Sullivan Marina.

5. This action is a timely appeal of the St. Louis District's final decision revoking Sullivan Marina's privilege to store large boats on the paved concrete area near Sullivan Marina's entrance.

6. Sullivan Marina also seeks declaratory relief describing the limits of the St. Louis District's supervisory authority and inspection authority with respect to boat storage.

**Jurisdiction**

7. This Court has original jurisdiction over contract disputes pursuant to the Tucker Act, 28 U.S.C. § 1491(a) and the Contract Disputes Act, 41 U.S.C. §§ 601-613.

**Parties and Factual Background**

8. Plaintiff Sullivan Marina operates a commercial marina and related facilities, including trailer sites for seasonal/non-transient camping, at Lake Shelbyville, Illinois.

9. Defendant is the United States of America, acting through the U.S. Army Corps of Engineers, St. Louis District.

10. Pursuant to a Notice of Availability ("NOA") dated August 17, 1994, attached hereto as Exhibit A, the St. Louis District offered interested parties the opportunity to present proposals for the development of a commercial marina and related facilities at Lake Shelbyville, Illinois. Under the categories of optional services that could be provided with approval, the NOA listed "[p]rovision of seasonal camping and non-transient trailer sites which meet

applicable standards" (hereinafter "seasonal/non-transient camping"). No other types of camping were discussed in the NOA.

11. Sullivan Marina submitted its initial proposal in September 1994. In its proposal, Sullivan Marina offered seasonal/non-transient camping as discussed by the NOA.

12. At no point during lease negotiations did the St. Louis District indicate that seasonal/non-transient camping was not an approved activity or that Sullivan Marina's proposal was non-responsive for offering such an activity.

13. Lease No. DACW43-1-95-17 ("Lease"), attached hereto as Exhibit B, was executed by both parties in early March 1995. The Lease has a term of twenty-five years. With respect to the types of services that could be offered by Sullivan Marina, the Use and Development Plan incorporated by the Lease tracked the terms set forth in the NOA. The only type of camping contemplated by the Use and Development Plan is the "[p]rovision of seasonal camping and non-transient trailer sites which meet applicable standards," as set forth in the NOA.

14. The Lease does not set forth any specific standards for the inspection of Sullivan Marina's camping facilities, and does not designate a camping season during which camping units or personal property belonging to campers may not be present.

15. The Five Year Plan, found in Section III of the Use and Development Plan, required Sullivan Marina to develop a certain number of campsites each year, thus providing approval for seasonal/non-transient camping, since seasonal/non-transient camping is the only type of camping activity contemplated under the Use and Development Plan.

16. Pursuant to Army Corps of Engineers' Real Estate Handbook, ER 405-1-12, Paragraph 8-149, which was in effect at the time the Lease was executed, camping for more than

30 days in any 60 consecutive day period, i.e., non-transient camping, is generally not allowed. This restriction is waivable, and in order to obtain this exception, a request must be approved by the Division Engineer.

17. Upon information and belief, the St. Louis District failed to make such a request before the Lease was executed. However, the St. Louis District gave no indication to Sullivan Marina that it had not yet obtained approval for seasonal/non-transient camping from the Mississippi Valley Division or that it would not obtain such approval in the future.

18. Sullivan Marina has offered seasonal/non-transient camping since the inception of the Lease with the full knowledge of the St. Louis District. Sullivan Marina has consistently maintained that seasonal/non-transient camping and the presence of camping units with utility connections and personal property belonging to campers throughout the year is part of the contract between the parties.

19. Camping units remained present throughout the year until 1997 without objection by the St. Louis District.

20. Beginning with the July 1998 inspection, the St. Louis District began asserting that the presence of camping units was not permitted during the winter months, November 1st through March 31st, and represented a Lease compliance issue.

21. On June 2, 2000, the St. Louis District requested that the Mississippi Valley Division approve seasonal/non-transient camping at Sullivan Marina. The St. Louis District's request intimated that seasonal/non-transient camping was not authorized by the terms of the Lease.

22. Pursuant to the St. Louis District's request for seasonal/non-transient camping at Sullivan Marina, approval from the Mississippi Valley Division was granted on June 21, 2000,

curing any failure to request approval from the Mississippi Valley Division that may have occurred. This approval included a prohibition against permanent habitation or the appearance of permanent habitation at any campsite, but it did not impose a compliance requirement with respect to the removal of personal property by November 1st of each year.

23. The Lease does not contain any specific prohibitions against the appearance of permanent habitation or the presence of personal property at campsites.

24. On June 28, 2000, the St. Louis District sent a letter to Sullivan Marina which confirmed that seasonal/non-transient camping was provided for in the Lease, and that seasonal/non-transient camping pertained to full hook-up sites. This letter did not require that all personal property must be removed by November 1st of each year, nor did it require that all camping units must be disconnected from utilities by that time.

25. The St. Louis District's letter did, however, state that campsites must not be used "for full or part-time residency and must not have any improvements such as mailboxes, landscaping, wheels or axles removed, trailer skirting, fencing or any other features that would indicate or give the appearance of permanent habitation."

26. The St. Louis District has also stated that camping must not give the appearance of private exclusive use.

27. All of these restrictions, however, are absent from the Lease.

28. At no time has the Lease been modified in writing to include any of the St. Louis District's requirements with respect to the appearance of a permanent habitation, private exclusive use, or the removal of personal property by a certain date of each year.

29. On June 9, 2003, the St. Louis District stated for the first time that it intended to impose a 100% compliance standard with respect to the presence of personal items and utility

connections when it inspected Sullivan Marina's operations after October 31, 2003 to ensure that there was no evidence of private exclusive use.

30. This intent was reiterated in letters dated August 13, 2003, and October 22, 2003.

31. The St. Louis District had never previously enforced a 100% compliance standard during inspections of Sullivan Marina and its letters referenced no specific authority permitting it to impose such a standard. The Lease itself includes no express provisions relating to inspection or compliance standards.

32. The St. Louis District's unilateral imposition of these terms demonstrates that it has lost sight of the fact that Sullivan Marina was granted a Lease, which defines the rights and obligations of the parties, rather than a mere license.

33. Sullivan Marina voiced its opposition to the 100% compliance standard in a letter dated October 28, 2003, and informed the St. Louis District that it felt the standard was unreasonable. However, Sullivan Marina stated that it would do its best to cooperate with the St. Louis District's requests, and made its campers aware of the St. Louis District's requirements.

34. The St. Louis District conducted an inspection on November 4, 2003. Because this inspection was conducted only three days after the camping season had closed, many of Sullivan Marina's customers had not removed personal items and disconnected their camping units from utilities.

35. Subsequently, the St. Louis District prepared a list of sites that it felt were in violation of its imposed standard, which it forwarded to Sullivan Marina's attention. It also stated that it would re-inspect on December 15, 2003, and that it expected 100% compliance at that time.

36. The St. Louis District re-inspected Sullivan Marina on December 15, 2003. During this inspection, 135 out of 145 campsites were found to be in compliance with the St. Louis District's request regarding personal property and utilities.

37. The ten remaining sites contained items of personal property, best described as scrap lumber and camping unit accessories, and one camping unit was connected to utilities. A significant number of the items noted by the Corps during the December 15, 2003 inspection were not specifically cited in the St. Louis District's field notes taken during the November 4, 2003, inspection, which purported to give Sullivan Marina notice of the items that needed to be removed by December 15, 2003. Two of the ten campsites had no camping units present at the time of the inspection and two are utilized by Sullivan Marina for purposes incidental to the Lease.

38. The St. Louis District took no immediate action with regard to these ten sites.

39. Aside from the fact that the St. Louis District did not have specific authority under the Lease to impose a 100% compliance standard, the nature of the items noted by the St. Louis District did not warrant any type of action under the Lease.

40. Sullivan Marina provided the St. Louis District with letters on January 14, 2004, and again on January 21, 2004, stating that additional items of personal property had been removed. All items were removed and all camping units disconnected before January 30, 2004.

41. Pursuant to a letter dated January 30, 2004, attached hereto as Exhibit C, the St. Louis District purported to revoke Sullivan Marina's right to have any camping units present from November 1st to March 31st of each year.

42. The St. Louis District's revocation acknowledged Sullivan Marina's letters of January 14 and 21, 2003, but stated that as of the December 15, 2003, inspection date, Sullivan Marina had not been in compliance with the St. Louis District's imposed standard.

43. The St. Louis District's letter of January 30, 2004 also made reference to persistent non-compliance on the part of Sullivan Marina. However, according to the St. Louis District's letter of August 13, 2003, Sullivan Marina had been given a satisfactory rating for 2003.

44. The St. Louis District cited §20 of the Lease as the source of its authority to revoke Sullivan Marina's seasonal/non-transient camping privileges. This section of the Lease provides that "[f]ailure to satisfactorily correct any substantial or persistent non-compliance within the specified time," is grounds for (1) "closure of all or part of the premises"; (2) "temporary suspension of operation"; (3) "revocation of the Lease, after notice in writing of such intent." The St. Louis District did not purport to close all or part of the premises, to temporarily suspend operations, or to revoke the Lease.

45. The St. Louis District's January 30, 2004, letter also stated that Sullivan Marina must cease the practice of storing large boats on the paved concrete area near the entrance to the marina and campground, although this had been Sullivan Marina's practice for many years.

46. The January 30, 2004 letter did not state that it was the St. Louis District's final decision, and indicated that Sullivan Marina could request a reconsideration of the St. Louis District's revocation from the St. Louis District directly.

47. The parties promptly engaged in discussions pertaining to a reconsideration of the revocation that was to take effect November 1, 2004, and met on March 23, 2004, to discuss these issues.

48. By letter dated February 23, 2004, Sullivan Marina requested permission to continue storing large boats on a paved area near the entrance to the marina. Sullivan Marina stated that storage of large boats in the unpaved storage area is impractical because of their weight, and it also presents a safety concern due to the danger of tipping.

49. In its response to the February 23, 2004 letter, dated March 17, 2004, the St. Louis District stated that previous modifications to the Lease creating a boat storage area required that all boats be stored in that area. The St. Louis District also noted that Sullivan Marina could request permission to pave the storage area to accommodate large boats. However, the language of the modification in question is permissive rather than mandatory and does not in fact require that all boats be stored in that area.

50. By letter of May 7, 2004, attached hereto as Exhibit D, Sullivan Marina, acting through counsel, set forth its interpretation of the Lease, and requested a final decision regarding the St. Louis District's inspection and compliance authority, revocation of Sullivan Marina's seasonal/non-transient camping rights, as well as the St. Louis District's final decision regarding the boat storage issue.

51. In a letter dated June 14, 2004, setting forth its interpretation of the Lease, attached hereto as Exhibit E, the St. Louis District reconsidered its prior decision, and partially reinstated Sullivan Marina's seasonal/non-transient camping privileges for all but those eight sites that were not in compliance with the St. Louis District's imposed standard as of the December 15, 2003, inspection.

52. The June 14, 2004 letter rejected Sullivan Marina's interpretation of its rights and obligations under the Lease, and required Sullivan Marina to comply with the St. Louis District's conditions for the remaining term of the Lease.

53. According to the June 14, 2004 letter, if Sullivan Marina does not comply with the St. Louis District's requirements, the St. Louis District reserves the right to:

a. Revoke permission to store camping units during the off season on sites that are in non-compliance;

b. Revoke permission to store camping units during the off season on all sites;

c. Revoke permission for extended stay/non-transient camping on those sites in non-compliance;

d. Permanently convert all non-compliant sites from extended stay/non-transient camping to transient sites; and/or

e. Revoke permission for extended stay/non-transient camping on all sites.

54. The letter further stated that Sullivan Marina could request reinstatement of seasonal/non-transient camping privileges at these individual sites for the 2005 recreation season, but only if Sullivan Marina is found "fully compliant" with the conditions of the seasonal/non-transient use permission imposed by the St. Louis District.

55. The June 14, 2004, letter also contained a refusal to approve storage of large boats on the pavement near the front entrance of the marina.

**COUNT I – Declaratory Judgment – Seasonal/Non-Transient Camping**

56. Sullivan Marina realleges and incorporates herein the allegations contained within paragraphs 1-55 as set forth above.

57. The St. Louis District's final decision pertaining to seasonal/non-transient camping is arbitrary and capricious and has no basis in law or the Lease.

58. There exists an actual controversy between Sullivan Marina and the St. Louis District with regard to their rights and obligations under the Lease.

59. This controversy requires disposition by this Court because of the on-going nature of the St. Louis District's inspections and compliance requirements.

60. This controversy involves fundamental questions of contract interpretation, and there is a special need for early resolution of the legal issues contained herein.

61. The St. Louis District's final decision regarding seasonal/non-transient camping is arbitrary and capricious and has no basis in law or the Lease.

62. A declaratory judgment by this Court is the only effective remedy for the issues presented herein.

63. Sullivan Marina has been harmed and will continue to be harmed by the imposition of inspection and compliance standards and requirements not required by the Lease.

WHEREFORE, Sullivan Marina prays this Court enter judgment in Sullivan Marina's favor and against the St. Louis District as follows:

a. Declaring that the St. Louis District's final decision revoking seasonal/non-transient camping privileges for eight Sullivan Marina campsites was improper, arbitrary and capricious, and contrary to the terms of the Lease, applicable law, and regulations;

b. Declaring that seasonal/non-transient camping is a contractual right granted by the Lease;

c. Declaring that the St. Louis District does not have a contractual right to impose inspection standards not required by the Lease;

d. Declaring that the St. Louis District does not have a contractual right to revoke camping privileges pursuant to § 20 of the Lease or any other Lease provision;

e. A declaration of the rights and obligations of the parties pertaining to seasonal/non-transient camping, permissible inspection standards under the Lease, and remedies for non-compliance with Lease terms;

f. A declaration of the St. Louis District's supervisory and inspection authority with respect to the property under its jurisdiction within the terms of the Lease and all applicable law and regulations;

g. The costs of this action, including reasonable attorney fees, as permitted by law; and,

h. Granting such further relief as the Court may deem just and proper.

**<u>COUNT II – Declaratory Judgment – Boat Storage</u>**

64. Sullivan Marina realleges and incorporates herein the allegations contained within paragraphs 1-63 as set forth above.

65. The St. Louis District's final decision to prohibit the storage of boats near the entrance to the campground and marina is arbitrary and capricious and has no basis in law or the Lease.

66. There exists an actual controversy between Sullivan Marina and the St. Louis District with regard to their rights and obligations under the Lease.

67. This controversy requires disposition by this Court because of the on-going nature of the St. Louis District's inspections and compliance requirements.

68. This controversy involves fundamental questions of contract interpretation, and there is a special need for early resolution of the legal issues contained herein.

69. A declaratory judgment by this Court is the only effective remedy for the issues presented herein.

70. Sullivan Marina has been harmed and will continue to be harmed by the imposition of inspection and compliance standards and requirements not required by the Lease.

WHEREFORE, Sullivan Marina prays this Court enter judgment in Sullivan Marina's favor and against the St. Louis District as follows:

a. Declaring that the St. Louis District's final decision denying boat storage rights was improper, arbitrary and capricious, and contrary to the terms of the Lease and applicable law and regulations;

b. Declaring that the St. Louis District does not have a contractual right to impose boat storage standards not required by the Lease;

c. A declaration of the rights and obligations of the parties pertaining to permissible inspection standards under the Lease and remedies for non-compliance;

d. A declaration of the St. Louis District's supervisory and inspection authority with respect to the property under its jurisdiction within the terms of the Lease and all applicable law and regulations;

e. The costs of this action, including reasonable attorney fees, as permitted by law; and,

f. Granting such further relief as the Court may deem just and proper.

By________________________________

A. Ben Foster
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6460
FAX 314-552-7460
Counsel for Plaintiff Sullivan Marina and Campground, L.L.C.

<u>Of Counsel:</u>

Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101
314-552-6091
FAX 314-552-7091