DEPARTMENT OF THE ARMY
ST. LOUIS DISTRICT, CORPS OF ENGINEERS
1222 SPRUCE STREET
ST. LOUIS, MISSOURI 63103-2833

REPLY TO
ATTENTION OF:

March 3, 1995

Real Estate Division
Management and Disposal Branch

SUBJECT: Sullivan Marina and Campground, L.L.C., Commercial Concession Lease No. DACW43-1-95-17

Sullivan Marina and Campground, L.L.C.
Attn: Elaine and Dennis Fayhee, Managing Members
112 East Washington
Paris, Illinois 61944

Gentlemen:

Enclosed is an executed copy of your Lease No. DACW43-1-95-17 for commercial concession development at Lake Shelbyville, Illinois.

We welcome you to the St. Louis District and look forward to working with you throughout the coming years in your efforts to develop this site.

If you have any questions, please do not hesitate to contact Gary Camp at (314) 331-8179.

Sincerely,

Gary E. Camp
Acting Chief, Management and
Disposal Branch

Enclosure

NO. DACW43-1-95-17

**DEPARTMENT OF THE ARMY**

**LEASE**

**FOR COMMERCIAL CONCESSION PURPOSES**

**SULLIVAN MARINA AND CAMPGROUND**

**LAKE SHELBYVILLE**

**MOULTRIE COUNTY, ILLINOIS**

**THIS LEASE** is made on behalf of the United States, between the **SECRETARY OF THE ARMY**, hereinafter referred to as the Secretary, and **SULLIVAN MARINA AND CAMPGROUND, L.L.C.**, an Illinois Company hereinafter referred to as the Lessee,

**WITNESSETH:**

That the Secretary, by authority of Title 16, United States Code, Section 460d, and for the consideration hereinafter set forth, hereby leases to the Lessee, the property identified in **Exhibit(s) "A" and "B"**, attached hereto and made a part hereof, hereinafter referred to as the premises, for commercial concession purposes.

**THIS LEASE** is granted subject to the following conditions:

1. **TERM**

Said premises are hereby leased for a term of twenty-five years, beginning March 1, 1995 and ending February 29, 2020.

2. **CONSIDERATION**

a. The rent due to the United States in consideration of this lease shall be calculated using the Revised Graduated Rental System (RGRS). The total gross receipts for each rental payment period will be multiplied by the applicable percentage rate and the resulting total due payable within twenty-five days to **FAO, USACE, Memphis District; and mailed directly to: U.S. Army Engineer District, Memphis, Attention: CELMM-RM-F, 167 North Main Street, B-202, Memphis, Tennessee 38103-1894.**

The percentage rate for the upcoming rental year will be selected from the following RGRS rental rate chart, using the line for the total gross receipts of the ending rental year:

| GROSS RECEIPTS (GR) | % RENT |
|---|---|
| Under $50,000 | 2.0% |
| $50,000-$200,000 | 2.1% |
| $200,000-$400,000 | 2.2% |
| $400,000-$600,000 | 2.3% |
| $600,000-$800,000 | 2.4% |
| $800,000-$1,000,000 | 2.5% |
| $1,000,000-$1,200,000 | 2.6% |
| $1,200,000-$1,400,000 | 2.7% |
| $1,400,000-$1,600,000 | 2.8% |

| | |
|---|---|
| $1,600,000-$1,800,000 | 2.9% |
| $1,800,000-$2,000,000 | 3.0% |
| $2,000,000-$2,200,000 | 3.1% |
| $2,200,000-$2,400,000 | 3.2% |
| $2,400,000-$2,600,000 | 3.3% |
| $2,600,000-$2,800,000 | 3.4% |
| $2,800,000-$3,000,000 | 3.5% |
| $3,000,000-$3,200,000 | 3.6% |
| $3,200,000-$3,400,000 | 3.7% |
| $3,400,000-$3,600,000 | 3.8% |
| $3,600,000-$3,800,000 | 3.9% |
| $3,800,000-$4,000,000 | 4.0% |
| $4,000,000-$4,200,000 | 4.1% |
| $4,200,000-$4,400,000 | 4.2% |
| $4,400,000-$4,600,000 | 4.3% |
| $4,600,000-$4,800,000 | 4.4% |
| $4,800,000-$5,000,000 | 4.5% |
| $5,000,001 and above | 4.6% |

(1) Gross receipts are defined as the total of the concessionaire's receipts from business operations conducted on the premises, including receipts of sub-lessees and licensees. No reductions are permitted except the costs of hunting and fishing licenses, license fees and taxes collected for direct remittance to a taxing authority, and the exact amount collected from customers for electrical service which is metered to the customer and collected by the Lessee as the servicing agent and paid to the power company. (OPTIONAL: Sale receipts from boats and motors are excluded and assessed a straight one-percent rent.)

(2) The rental payment shall be quarterly with the first payment due March 31, 1995. The rental year will be a partial year the first year, beginning on the date of this lease and ending on 31 December 1995; for each rental year thereafter, the year will begin on 1 January and end on 31 December.

(3) RENT PAYMENT CALCULATION FORM

Reporting period ____________________

a) Gross receipts for this period: $__________

b) Rent rate: x __________

c) Amount due (a x b) $__________

IF OPTIONAL BOAT RATE SELECTED:

d) Boat and motor sales: $__________

e) Rate: x 0.01

f) Amount due (d x e) $__________

TOTAL DUE (c + f) $__________

b. All rent and other payments due under the terms of this lease must be paid on or before the date they are due in order to avoid the mandatory sanctions imposed by the Debt Collection Act of 1982, 31 U.S.C. § 3717. This statute requires the imposition of an interest charge for the late payment of debts owed to the United States; an administrative charge to cover the costs of processing and handling delinquent debts; and the assessment of an additional penalty charge on any portion of a debt that is more than 90 days past due. The provisions of the statute will be implemented as follows:

(1) The United States will impose an interest charge, the amount to be determined by law or regulation, on late payment of rent. Interest will accrue from (the due date) (the later of the due date or the date notification of the amount due is mailed to the Lessee). An administrative charge to cover the cost of processing and handling each late payment will also be imposed.

(2) In addition to the charges set forth above, the United States will impose a penalty charge of six percent (6%) per annum on any payment, or portion thereof, more than ninety (90) days past due. The penalty shall accrue from the date of the delinquency and will continue to accrue until the debt is paid in full.

(3) All payments received will be applied first to any accumulated interest, administrative and penalty charges and then to any unpaid rental or other payment balance. Interest will not accrue on any administrative or late payment penalty charges.

**3. NOTICES**

All correspondence and notices to be given pursuant to this lease shall be addressed, if to the Lessee, to **Sullivan Marina and Campground, L.L.C., 112 East Washington, Paris, Illinois 61944.** and, if to the United States, to the **District Engineer, Attn: Chief, Real Estate Division, U.S. Army Corps of Engineers, St. Louis District, 1222 Spruce Street, St. Louis, Missouri 63103-2833** , or as may from time to time otherwise be directed by the parties. Notice shall be deemed to have been duly given if and when enclosed in a properly sealed envelope or wrapper, addressed as aforesaid, and deposited, postage prepaid, in a post office regularly maintained by the United States Postal Service.

**4. AUTHORIZED REPRESENTATIVES**

Except as otherwise specifically provided, any reference herein to "Secretary of the Army," "District Engineer," "said officer" or "Lessor" shall include their duly authorized representatives. Any reference to "Lessee" shall include sub-lessees, assignees, transferees, concessionaires, and its duly authorized representatives.

**5. USE AND DEVELOPMENT OF THE PREMISES**

**a.** The premises may be occupied and used by the Lessee or duly authorized agents, sublessees, assignees, or transferees solely for the conduct of business in connection with the recreational development of the premises for the general use of the public. Lessee shall provide facilities and activities in accordance with the Use and Development Plan and its architectural theme and sign plan, as supplemented or amended, (Development Plan) and attached hereto as **Exhibit "C"**. The sign plan will be in accordance with the Sign Standards Manual, EP 310-1-6A, Chapter 17.

**b.** No structure may be erected or altered upon the premises unless and until said Development Plan has been approved in writing by the District Engineer. The District Engineer may require the Lessee, upon completion of each of the proposed developments, to furnish a complete "as built" site plan and "as built" construction plans for all facilities with certification by a Professional Engineer that the construction meets all codes and standards.

**c.** The District Engineer may agree in writing to an extension of time for providing the facilities and activities designated in said Development Plan or may waive the providing thereof for other than those specified for the first lease year as designated in said development Plan, whenever, in the opinion of the District Engineer, the public demand does not reach the anticipated level at the time stated, or when a delay in providing the facilities and services is beyond the control of the Lessee; provided, however, that at the discretion of the District Engineer, such undeveloped areas may be withdrawn from the leased premises.

d. The use and occupation of the premises shall be subject to the general supervision and approval of the District Engineer. Modifications to said Development Plan must be approved in writing by the District Engineer prior to implementation of the change.

e. All structures and equipment furnished by the Lessee shall be and remain the property of the Lessee, except as otherwise provided in the Condition on **RESTORATION.**

**6. PERFORMANCE OF CONTRACT**

The Lessee agrees to obtain and deliver to the District Engineer, within thirty (30) days, either a valid surety bond issued by a surety corporation licensed by a state regulatory entity, a performance deposit, or an irrevocable letter of credit issued by a Federally insured financial institution in a form satisfactory to the District Engineer. **Said surety bond, performance deposit, or letter of credit shall be in the sum of $ 5000.00, payable to the United States, and conditioned upon full and satisfactory performance of the obligations of the Lessee herein set forth in this lease.** To insure favorable performance by the Lessee of all the covenants, terms and conditions of this lease, said deposit shall be retained or said bond or letter of credit shall be kept in full force and effect by the Lessee until released in writing by the District Engineer upon completion of the development set out in said Development Plan, attached as Exhibit "C", as supplemented or amended, is completed.

**7. CONDITION OF PREMISES**

a. The Lessee acknowledges that it has inspected the premises, knows its condition, and understands that the same is leased without any representations or warranties whatsoever and without obligation on the part of the United States to make any alterations, repairs, or additions thereto.

**8. RATES AND PRICES**

a. The rates and prices charged by the Lessee or its sub-lessees shall be reasonable and comparable to rates charged for similar goods and services by others in the area. The District Engineer shall have the right to review such rates and prices and require an increase or reduction when it is determined that the objective of this paragraph has been violated. The Lessee shall keep such rates and prices posted at all times in an appropriate and conspicuous place on the premises. The District Engineer may require submission of a schedule of the rates and prices at any time.

b. However, no user fees may be charged by the Lessee or its sublessees for use of facilities developed in whole or part with federal funds if a user charge by the Corps of Engineers for the facility would be prohibited under law.

**9. PROTECTION OF PROPERTY**

The Lessee shall be responsible for any damage that may be caused to property of the United States by the activities of the Lessee under this lease and shall exercise due diligence in the protection of all property located on the premises against fire or damage from any and all other causes. Any property of the United States damaged or destroyed by the Lessee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Lessee to the satisfaction of the District Engineer, or, at the election of the District Engineer, reimbursement may be made therefor by the grantee in an amount necessary to restore or replace the property to a condition satisfactory to the District Engineer.

**10. RIGHT TO ENTER AND FLOOD**

The right is reserved to the United States, its officers, agents, and employees to enter upon the premises at any time and for any purpose necessary or convenient in connection with Government purposes; to make inspections; to remove timber or other material, except property of the Lessee; to flood the premises; to manipulate the level of the lake or pool in any manner whatsoever; and/or to make any other use of the lands as may be necessary in connection with project purposes, and the Lessee shall have no claim for damages on account thereof against the United States or any officer, agent, or employee thereof.

**11. INDEMNITY**

The United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Lessee, or for damages to the property or injuries to the person of the Lessee's officers, agents or employees or others who may be on the premises at their invitation or the invitation of any one of them, and the Lessee shall hold the United States harmless from any and all such claims not including damages due to the fault or negligence of the United States or its contractors.

**12. INSURANCE**

a. At the commencement of this lease, the Lessee will obtain from a reputable insurance company, or companies, liability insurance. The insurance shall provide an amount not less than that which is prudent, reasonable and consistent with sound business practices or a minimum Combined Single Limit of $1,000,000.00, whichever is greater, for any number of persons or claims arising from any one incident with respect to bodily injuries or death resulting therefrom, property damage, or both, suffered or alleged to have been suffered by any person or persons, resulting from the operations of the Lessee under the terms and conditions of this lease, and the Lessee shall require its insurance company to furnish to the District Engineer a copy of the policy or policies, or, if acceptable to the District Engineer, a certificate of insurance evidencing the purchase of such insurance. The District Engineer shall have the right to review and revise the amount of minimum liability insurance coverage required. The policy shall provide that the insurance company give the District Engineer thirty (30) days written notice of any cancellation, non-renewal or change in such insurance.

b. The lessee's sublessees and licensees, at the commencement of operating under the terms of this lease, shall obtain from a reputable insurance company or companies liability insurance. The insurance shall provide an amount not less than that which is prudent, reasonable and consistent with sound business practices, for any number of persons or claims arising from any one incident with respect to bodily injuries or death resulting therefrom, property damage, or both, suffered or alleged to have been suffered by any person or persons, resulting from the operations of the sublessees and licensees under the terms of this lease. The lessee shall require any insurance carrier or carriers to furnish to the District Engineer a copy of the policy or policies, or, if acceptable to the District Engineer, certificates of insurance evidencing the purchase of such insurance.

c. The insurance policy or policies shall be of comprehensive form of contract and shall specifically provide protection appropriate for the types of facilities, services and activities involved. The Lessee shall require that the insurance company give the District Engineer thirty (30) days written notice of any cancellation or change in such insurance. The District Engineer may require closure of any or all of the premises during any period for which the Lessee does not have the required insurance coverage.

13. **RESTORATION**

On or before the expiration of this lease or its termination by the Lessee, the Lessee shall vacate the premises, remove the property of the Lessee therefrom, and restore the premises to a condition satisfactory to the District Engineer. If, however, this lease is revoked, the Lessee shall vacate the premises, remove said property, and restore the premises to the aforesaid condition within such time as the District Engineer may designate. In either event, if the Lessee shall fail or neglect to remove said property and restore the premises, then, at the option of the District Engineer, said property shall either become the property of the United States without compensation therefor, or the District Engineer may cause the property to be removed and no claim for damages against the United States or its officers or agents shall be created by or made on account of such removal and restoration work. The Lessee shall also pay the United States on demand any sum which may be expended by the United States after the expiration, revocation, or termination of this lease in restoring the premises.

14. **NON-DISCRIMINATION**

The Lessee shall not discriminate against any person or persons because of race, color, age, sex, handicap, national origin, or religion in the conduct of operations on the leased premises. The Lessee will comply with the Americans with Disabilities Act and attendant Americans with Disabilities Act Accessibility Guidelines (ADAAG) published by the Architectural And Transportation Barriers Compliance Board.

15. **APPLICABLE LAWS AND REGULATIONS**

a. The Lessee shall comply with all applicable Federal laws and regulations and with all applicable laws, ordinances, and regulations of the state, county, and municipality wherein the premises are located, including, but not limited to, those regarding construction, health, safety, food service, water supply, sanitation, use of pesticides, and licenses or permits to do business.

b. The Lessee will provide an annual certification that all water and sanitary systems on the premises have been inspected and comply with Federal, state and local standards. Lessee will also provide a statement of compliance with the Americans with Disabilities Act, noting any deficiencies and providing a schedule for correction.

c. In addition to other applicable codes, the lessee shall comply with the current editions of the National Fire Protection Association (NFPA) code 70, National Electric Code, ANSI/NFPA code 303, Marinas and Boatyards, and other applicable codes covering the type of facilities. Upon the request of the District Engineer the lessee will provide an annual certification that all electrical installations on the premises have been inspected by a qualified individual and comply with the applicable codes.

16. **TAXES**

Payment of any and all taxes imposed by the state or its political subdivisions upon the property or business of the Lessee on the premises is the responsibility of the Lessee.

17. **SUBJECT TO EASEMENTS**

This lease is subject to all existing easements, easements subsequently granted, and established access routes for roadways and utilities located, or to be located, on the premises, provided that the proposed grant of any new

easement or route will be coordinated with the Lessee, and easements will not be granted which will, in the opinion of the District Engineer, interfere with developments, present or proposed, by the Lessee. The Lessee will not close any established access routes without written permission of the District Engineer.

**18. SUBJECT TO MINERAL INTERESTS**

This lease is subject to all outstanding mineral interests. As to Federally owned mineral interests, it is understood that they may be included in present or future mineral leases issued by the Bureau of Land Management (BLM), which has responsibility for mineral development on Federal lands. The Secretary will provide lease stipulations to BLM for inclusion in said mineral leases that are designed to protect the premises from activities that would interfere with the Lessee's operations or would be contrary to local laws.

**19. TRANSFERS, ASSIGNMENTS, SUBLEASES**

a. Without prior written approval of the District Engineer, the Lessee shall neither transfer nor assign this lease or a controlling interest therein (including, without limitation, mergers, consolidations, reorganizations, or other business combinations), nor sublet the premises or any part thereof, nor grant any interest, privilege, or license whatsoever in connection with this lease, nor shall this lease be assignable or transferable by process or operation of law including, but not limited to, insolvency proceedings, bankruptcy, or intestacy, or in any other manner whatever.

(1) Failure to comply with this condition or the procedures described herein shall constitute a material breach of this lease for which this lease may be revoked immediately by the District Engineer, and, the Secretary shall not be obligated to recognize any right of any person or entity to an interest in this lease or to own or operate the facilities authorized hereunder acquired in violation hereof.

(2) The Lessee shall advise the person(s) or entity proposing to enter into a transaction described in Subsection a. above that the District Engineer shall be notified and that the proposed transaction is subject to review and approval by the District Engineer. The Lessee shall request in writing the District Engineer's approval of the proposed transaction and shall promptly provide the District Engineer all relevant documents related to the transaction, and the name(s) and qualifications of the person(s) or entity involved in the proposed transaction.

b. The District Engineer, in exercising discretion to approve or disapprove transfer, assignments, or subleases, shall among other matters, take into consideration the management qualifications of the individuals or entities that would thereby obtain a controlling interest in the facilities or services authorized hereunder, the experience of such individuals or entities with similar operations, and the ability of such individuals or entities to operate the operations authorized hereunder in the public interest.

c. The term "controlling interest" in a Lessee's ownership shall mean, in the instance of a corporate Lessee, an interest beneficial or otherwise, of sufficient outstanding voting securities or capital of the Lessee so as to permit exercise of substantial managerial influence over the operations of the Lessee, and, in the instance of a partnership, joint venture, or individual Lessee, any beneficial ownership of the capital assets of the Lessee sufficient to permit substantial managerial influence over the operations of the Lessee. The District Engineer will determine at the request of interested parties whether or not an interest in a lease constitutes a controlling interest within the meaning hereof.

d. The Lessee may not enter into any agreement with any entity or person, except employees of the Lessee, to exercise substantial management responsibilities for the operation authorized hereunder or any part thereof without the prior written approval of the District Engineer.

e. No mortgage shall be executed, and no bonds, shares of stock, or other evidence of interest in, or indebtedness upon the assets of the Lessee located on the premises, including this lease, shall be issued, except for the purposes of installing, enlarging, refinancing or improving concession plant, equipment and facilities, provided that, such assets, in addition, may be encumbered for the purposes of purchasing existing concession plant, equipment and facilities. In the event of default on such a mortgage, encumbrance, or such other indebtedness, or of other assignment, transfer, or encumbrance, the creditor or any assignee thereof shall succeed to the interest of the Lessee in such assets but shall not thereby acquire operating rights or privileges. Such rights or privileges shall be subject to disposition by the District Engineer.

f. The lessee may allow independent private service companies to enter and conduct business on the premises for the benefit of the Lessee's customers on an as-called basis without a formal sublease or license agreement, provided that the service is occasional and incidental to the Lessee's operation and that any compensation paid to the Lessee is included in gross receipts.

g. The Lessee will not sponsor or participate in timeshare ownership of any structures, facilities, accommodations, or personal property on the premises. The lessee will not subdivide nor develop the premises into private residential development.

20. **COMPLIANCE, CLOSURE, REVOCATION AND RELINQUISHMENT**

a. The Lessee and/or any sublessees or licensees are charged at all times with full knowledge of all the limitations and requirements of this lease, and the necessity for correction of deficiencies, and with compliance with reasonable requests by the District Engineer. This lease may be revoked in the event that the Lessee violates any of its terms and conditions and continues and persists in such non-compliance, or fails to obtain correction of deficiencies by sublessees or licensees. The Lessee will be notified of any non-compliance, which notice shall be in writing or shall be confirmed in writing, giving a period of time in which to correct the non-compliance. Failure to satisfactorily correct any substantial or persistent non-compliance within the specified time is grounds for closure of all or part of the premises, temporary suspension of operation, or revocation of the lease, after notice in writing of such intent. Future requests by the Lessee to extend the lease, expand the premises, modify authorized activities, or assign the lease shall take into consideration the Lessee's past performance and compliance with the lease terms.

b. This lease may be relinquished by the Lessee by giving six months prior written notice to the District Engineer in the manner prescribed in the Condition on **NOTICES.**

c. In addition to the above right of revocation, if the rent or other payments provided to be paid by the Lessee or any part thereof shall be in arrears and unpaid for thirty (30) days after the same shall become due, then, and in such case, the District Engineer may elect to revoke this lease by notification in writing to the Lessee.

21. **HEALTH AND SAFETY**

a. The Lessee shall keep the premises in good order and in a clean, sanitary, and safe condition and shall have the primary responsibility for

ensuring that any sublessees and concessionaires operate and maintain the premises in such a manner.

b. In addition to the rights of revocation for non-compliance, the District Engineer, upon discovery of any hazardous conditions on the premises that presents an immediate threat to the health and/or danger to life or property, will so notify the Lessee and will require that the affected part or all of the premises be closed to the public until such condition is corrected and the danger to the public eliminated. If the condition is not corrected within the time specified, the District Engineer will have the option to: (1) correct the hazardous conditions and collect the cost of repairs from the Lessee; or, (2) revoke the lease. The Lessee will be obligated to pay rental, notwithstanding any interruption or suspension of activities. The Lessee and its assignees or sub-lessees shall have no claim for damages against the United States, or any officer, agent, or employee thereof on account of action taken pursuant to this condition.

**22. PUBLIC USE**

No attempt shall be made by the Lessee, nor any of its sub-lessees or concessionaires, to forbid the full use by the public of the premises and of the water areas of the project, subject, however, to the authority and responsibility of the Lessee to manage the premises and provide safety and security to the visiting public.

**23. PROHIBITED USES**

a. The Lessee shall not permit gambling on the premises or install or operate, or permit to be installed or operated thereon, any device which is illegal; or use the premises or permit them to be used for any illegal business or purpose. There shall not be conducted on or permitted upon the premises any activity which would constitute a nuisance.

b. As an exception, some games of chance, such as raffles, games and sporting events, may be conducted by nonprofit organizations under special use permits issued in conjunction with special events, if permissible by state and local law. Any request to conduct a game of chance must be submitted in writing to the District Engineer.

c. In accordance with state and local laws and regulations, the Lessee may sell, store, or dispense, or permit the sale, storage, or dispensing of beer, malt beverages, light wines or other intoxicating beverages on the premises in those facilities where such service is customarily found. Bar facilities will only be permitted if offered in connection with other approved activities. Advertising of such beverages outside of buildings is not permitted. Carry out package sales of hard liquor is prohibited.

**24. NATURAL RESOURCES**

The Lessee shall cut no timber, conduct no mining operations, remove no sand, gravel, or kindred substances from the ground, commit no waste of any kind, nor in any manner substantially change the contour or condition of the premises, except as may be authorized under and pursuant to the Condition on **USE AND DEVELOPMENT OF THE PREMISES** herein. The Lessee may salvage fallen or dead timber; however, no commercial use shall be made of such timber.

**25. ACCOUNTS AND RECORDS**

a. The Lessee shall maintain complete and accurate records and no later than 120 days following the end of the Lessee's fiscal year shall submit to the District Engineer reports and data for the preceding year to include a financial statement for the activity covered by the lease and compiled by an

independent certified public accountant or by an independent licensed public accountant certified or licensed by a regulatory authority of a state.

**b.** The District Engineer shall have the right at any time (1) to verify all financial reports and copy the books, correspondence, memoranda, income tax returns and other records of the Lessee and sublessees, if any, and of the records of proprietary or affiliated companies, if any, related to this lease during the period of the lease (This right shall extend for such time thereafter as may be necessary to accomplish such verification, but in no event more than five (5) years after the close of the business year of the Lessee) or (2) require the Lessee to furnish an audited financial statement; or (3) to require the Lessee to furnish an audited statement of gross receipts for the concession operation, including income of any sublease operation, and certification of accuracy of the reported income.

c. Statements will be prepared by an independent certified public accountant or by a licensed public accountant certified or licensed by a regulatory authority of a state. Audits will be in accordance with the auditing standards and procedures promulgated by the American Institute of Certified Public Accountants. Financial statements requiring audits and accompanied by remarks such as " prepared from client records without audit" are unacceptable. Audited and reviewed financial statements shall contain appropriate footnotes. The independent licensed or certified public accountant shall include a statement to the effect that the amounts included in the financial report are consistent with those included in the Federal tax returns. If the amounts are not consistent, then a statement showing differences shall be included. An audit of Lessees tax return is not required.

**27. ENVIRONMENTAL PROTECTION**

**a.** Within the limits of their respective legal powers, the parties to this lease shall protect the project against pollution of its air, ground, and water. The Lessee shall comply promptly with any laws, regulations, conditions or instructions affecting the activity hereby authorized if and when issued by the Environmental Protection Agency, or any Federal, state, interstate or local governmental agency having jurisdiction to abate or prevent pollution. The disposal of any toxic or hazardous materials within the premises is specifically prohibited. Such regulations, conditions, or instructions in effect or prescribed by the Environmental Protection Agency, or any Federal, state, interstate or local governmental agency, are hereby made a condition of this lease. The Lessee shall require all sanitation facilities on boats moored at the Lessee's facilities, including rental boats, to be sealed against any discharge into the lake. Services for waste disposal, including sewage pump-out of watercraft, shall be provided by the Lessee as appropriate. The Lessee shall not discharge waste or effluent from the property in such a manner that the discharge will contaminate streams or other bodies of water or otherwise become a public nuisance.

**b.** The Lessee will use all reasonable means available to protect the environment and natural resources, and where damage nonetheless occurs arising from the Lessee's activities , the Lessee shall be liable to restore the damaged resources.

c. The lessee must obtain approval in writing from the District Engineer before any pesticides or herbicides are applied to the premises.

**27. PRELIMINARY ASSESSMENT SCREENING**

A Preliminary Assessment Screening (PAS) documenting the known history of the property with regard to the storage, release or disposal of hazardous substances thereon, is attached hereto and made a part hereof as **Exhibit "D"**.

Upon expiration, revocation or termination of this lease, another PAS shall be prepared which will document the environmental condition of the property at that time. A comparison of the two assessments will assist the District Engineer in determining any environmental restoration requirements. Any such requirements will be completed by the lessee in accordance with the condition on **RESTORATION**.

28. **HISTORIC PRESERVATION**

The Lessee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archaeological, architectural or other cultural artifacts, relics, remains, or objects of antiquity. In the event such items are discovered on the premises, the Lessee shall immediately notify the District Engineer and protect the site and the material from further disturbance until the District Engineer gives clearance to proceed.

29. **SOIL AND WATER CONSERVATION**

The Lessee shall maintain, in a manner satisfactory to the District Engineer, all soil and water conservation structures that may be in existence upon said premises at the beginning of, or that may be constructed by the Lessee during the term of, this lease, and the Lessee shall take appropriate measures to prevent or control soil erosion within the premises. Any soil erosion occurring outside the premises resulting from the activities of the Lessee shall be corrected as directed by the District Engineer.

30. **LIGHTS, SIGNALS AND NAVIGATION**

There shall be no unreasonable interference with navigation by the exercise of the privileges granted by this lease. If the display of lights and signals on any work hereby authorized is not otherwise provided for by law, such lights and signals as may be prescribed by the Coast Guard or by the District Engineer shall be installed and maintained by and at the expense of the Lessee.

31. **HUNTING AND TRAPPING**

The Lessee shall not hunt or trap or allow hunting or trapping on the premises.

32. **TRANSIENT USE**

a. Camping, including transient trailers or recreational vehicles, at one or more campsites for a period longer than thirty (30) days during any sixty (60) consecutive day period is prohibited. The Lessee will maintain a ledger and reservation system for the use of any such campsites, said system to be acceptable to the District Engineer.

b. Occupying any lands, buildings, vessels or other facilities within the premises for the purpose of maintaining a full- or part-time residence is prohibited, except for employees, residing on the premises, for security purposes, if authorized by the District Engineer.

33. **DISPUTES CLAUSE**

a. Except as provided in the Contract Disputes Act of 1978 (41 U.S.C. 601-613) (the Act), all disputes arising under or relating to this lease shall be resolved under this clause and the provisions of the Act.

b. "Claim," as used in this clause, means a written demand or written assertion by the Lessee seeking, as a matter of right, the payment of money in a sum certain, the adjustment of interpretation of lease terms, or other

relief arising under or relating to this lease. A claim arising under this lease, unlike a claim relating to that lease, is a claim that can be resolved under a lease clause that provides for the relief sought by the Lessee. However, a written demand or written assertion by the Lessee seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph c.(2) below. The routine request for rental payment that is not in dispute is not a claim under the Act. The request may be converted to a claim under the Act, by this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

c. (1) A claim by the Lessee shall be made in writing and submitted to the District Engineer for a written decision. A claim by the Government against the Lessee shall be subject to a written decision by the District Engineer.

(2) For Lessee claims exceeding $50,000, the Lessee shall submit with the claim a certification that:

(i) The claim is made in good faith;

(ii) Supporting data are accurate and complete to the best of the Lessee's knowledge and belief; and

(iii) The amount requested accurately reflects the lease adjustment for which the Lessee believes the Government is liable.

(3) If the Lessee is an individual, the certificate shall be executed by that individual. If the Lessee is not an individual, the certification shall be executed by:

(i) A senior company official in charge at the Lessee's location involved; or

(ii) An officer or general partner of the Lessee having overall responsibility of the conduct of the Lessee's affairs.

d. For Lessee claims of $50,000 or less, the District Engineer must, if requested in writing by the Lessee, render a decision within 60 days of the request. For Lessee-certified claims over $50,000, the District Engineer must, within 60 days, decide the claim or notify the Lessee of the date by which the decision will be made.

e. The District Engineer's decision shall be final unless the Lessee appeals or files a suit as provided in the Act.

f. At the time a claim by the Lessee is submitted to the District Engineer or a claim by the Government is presented to the Lessee, the parties, by mutual consent, may agree to use alternative means of dispute resolution. When using alternate dispute resolution procedures, any claim, regardless of amount, shall be accompanied by the certification described in paragraph c.(2) of this clause, and executed in accordance with paragraph c.(3) of this clause.

g. The Government shall pay interest on the amount found due and unpaid by the Government from (1) the date the District Engineer received the claim (properly certified if required), or (2) the date payment otherwise would be due, if that date is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury, as provided in the Act, which is applicable to the period during which the

District Engineer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim. Rental amounts due to the Government by the Lessee will have interest and penalties as set out in the Condition on **CONSIDERATION.**

**h.** The Lessee shall proceed diligently with performance of the lease, pending final resolution of any request for relief, claim, appeal, or action arising under the lease, and comply with any decision of the District Engineer.

**34. COVENANT AGAINST CONTINGENT FEES**

The Lessee warrants that no person or selling agency has been employed or retained to solicit or secure this lease upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Lessee for the purpose of securing business. For breach or violation of this warranty, the United States shall have the right to annul this lease without liability or, in its discretion, to require the Lessee to pay, in addition to the lease rental or consideration, the full amount of such commission, percentage, brokerage, or contingent fee.

**35. OFFICIALS NOT TO BENEFIT**

No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this lease or to any benefits to arise therefrom. However, nothing herein contained shall be construed to extend to any incorporated company if the lease be for the general benefit of such corporation or company.

**36. SEVERAL LESSEES**

If more than one Lessee is named in this lease the obligations of said Lessees herein contained shall be joint and several obligations.

**37. MODIFICATIONS**

This lease contains the entire agreement between the parties hereto, and no modification of this agreement, or waiver, or consent hereunder shall be valid unless the same be in writing, signed by the parties to be bound or by a duly authorized representative; and this provision shall apply to this clause as well as all other conditions of this lease.

**38. DISCLAIMER**

This instrument is effective only insofar as the rights of the United States in the premises are concerned; and the grantee shall obtain such permission as may be required on account of any other existing rights. It is understood that the granting of this lease does not eliminate the necessity of obtaining any Department of the Army permit which may be required pursuant to the provisions of Section 10 of the Rivers and Harbors Act of 3 March 1899 (30 Stat. 1151; 33 U.S.C. § 403), or Section 404 of the Clean Water Act (33 U.S.C. § 1344).

**IN WITNESS WHEREOF** I have hereunto set my hand by authority of the Secretary of the Army this 2nd day of March, 1995.

Signed and sealed
in the presence of:

______________________

______________________

Thomas R. Hewlett
THOMAS R. HEWLETT
Chief, Real Estate Division

**THIS LEASE** is also executed by the Lessee this 1st day of March, 1995.

Signed and sealed
in the presence of:

FOR: SULLIVAN MARINA AND CAMPGROUND L.L.C.

BY: Elaine M. Fayhee
ELAINE M. FAYHEE
Managing Member

BY: Dennis G. Fayhee
DENNIS G. FAYHEE
Managing Member




SULLIVAN MARINA
AND
CAMPGROUND
CONCESSION AREA

T13N R5E OF 3RD PM
MOULTRIE CO., IL

■ LEASE AREA - 47.37 ACRES, MORE OR LESS

DACW43-1-95-17

EXHIBIT "A"

DACW43-1-95-17

DESCRIPTION

SULLIVAN MARINA AND CAMPGROUND, L.L.C.
COMMERCIAL CONCESSION AREA
LAKE SHELBYVILLE, ILLINOIS

A tract of land lying within the U.S. Government Project, Lake Shelbyville, situated in part of the southwest quarter of the southwest quarter of section 25; and part of the east half of the southeast quarter of section 26; and part of the northeast quarter of the northeast quarter of Section 35, all in Township 13 north, Range 5 east of the 3rd principal meridian, Moultrie County, state of Illinois, and being more particularly described as follows:

Beginning at a corner common to Sections 25, 26, 35, and 36; thence
Southwardly, 325.0 feet along a line common to Sections 35 and 36; thence
Northwestwardly, to the intersection of the south bank of the Kaskaskia River and the east right-of-way line of Illinois Highway 32; thence
Northwardly, along the above-mentioned east right-of-way line 400.0 feet, more of less; thence
Westwardly, along the above-mentioned right-of-way 100.0 feet, more less; thence
Northwardly, along the above-mentioned east right-of-way line to a point on the north line of the south 165.0 feet of the north half of the southeast quarter of Section 26; thence
Eastwardly, along the above-mentioned north line to a point on the west right-of-way line of Wabash Railroad (abandoned); thence
Southeastwardly, along the above-mentioned west right-of-way line to a point on the south line of Section 25; thence
Westwardly, to the point of beginning, containing 47.37 acres, more or less, as shown on map marked Exhibit "A."

EXHIBIT "B"

DACW43-1-95-17

EXHIBIT "C"

USE AND DEVELOPMENT PLAN
SULLIVAN MARINA AND CAMPGROUND, L.L.C.

I. Full Service Marina

In order to constitute a "full service marina" the SULLIVAN MARINA AND CAMPGROUND L.L.C. must provide quality facilities and services with the objective of satisfying public demand in the manner specified as follows:

II. Services

**A.** Said business must provide storage for two hundred boats (200) and offer the following activities as a minimum, by the conclusion of the second year after the contract award:

1. Rental of boats and motors.

2. Rental of open and covered slips for recreational use and storage.

3. Boat and motor repair services.

4. Sale of motor fuels, boating accessories and fishing supplies.

5. Sale of grocery items, personal care products, prepackaged food items, and snacks and refreshments.

6. Public rest room facilities and marine sewage pump out service.

7. Provide towing and emergency servicing to stranded boats from the Coal Shaft Bridge eastward, encompassing the navigable portions of Camfield Branch, Whitley Creek, and the Kaskaskia River.

8. Sale of miscellaneous gift items judged not to be offensive in language or appearance. Any products judged by the Government to be offensive will be removed upon notification.

9. Launching and retrieval services for large boats.

**B.** Said business may also include at its option, with approval:

1. Guide services.

2. Provision of overnight accommodations (cabins).

3. Provision of seasonal camping and non-transient trailer sites which meet applicable standards.

4. Storage of boats on trailers.

5. Boat raising (sunken craft) and retrieval. Sale of boats, motors, and boating accessories.

6. Sale of prepared foods (restaurant, snack bar, etc.).

7. Rental of recreation vehicles.

8. Transportation to off-site storage facility.

9. Swimming pool and public shower facilities. (Showers required if camping or swimming pool is provided.)

**NOTE:** During periods of drought, shallow water may restrict ingress-egress to the marina and restrict boat slip use and during periods of high water boats may not be able to pass under the Highway 32 bridge.

**NOTE:** Replacement and/or repair of walkways between the parking lot and marina will be the responsibility of the lessee.

**NOTE:** Corps of Engineers Operational Regulations and Standards pertaining to outgrant management on a day to day basis will be provided to Sullivan Marina and Campground, L.L.C. management by the Lake Shelbyville Operations Project Manager and the Construction-Operations Readiness Division. Real estate management and Lease coordination will be provided to Sullivan Marina and Campground, L.L.C. by the Real Estate Division in coordination with the Construction-Operations Readiness Division. Information supplied to the Lessee will also be furnished to the Management and Disposal Branch of the Real Estate Division to become part of the official Lease record.

III. FIVE YEAR PLAN - THE FOLLOWING DEVELOPMENT OF THE CONCESSION SITE WILL PROCEED IN ACCORDANCE WITH CONDITION 5. USE AND DEVELOPMENT OF THE PREMISES.

A. YEAR ONE

1. Open and Covered boat slips totaling 150 slips. A2

2. Rental of boats and motors as follows: 4 fishing boats with motors, 2 pontoon boats, and 2 paddle boats. A1

3. Sale of motor fuels.

4. Public rest room facilities for the restaurant and gas dock.

5. Boat and motor repair services.

6. Marine sewage pump out services.

7. Boat Towing and emergency servicing as required in II. 7. above.

8. Campsites - 38 full hook-up, 107 water and electric, and 7 primitive.

9. Public rest room facilities for the campground and swimming pool.

10. Restaurant, snack bar, fishing supplies and convenience store.

11. Swimming pool.

12. Managers quarters and three rental units per submitted specifications.

13. Oil and chip Roads throughout the lease area.

14. Two hundred new picnic tables.

15. Laundry facilities.

B. YEAR TWO

1. Convert existing full hook-up campsites to 50 amp. service.

2. Convert 21 water/electric campsites to full hook-up.

3. Provide additional - 1 house boat, 2 fishing boats with motors, 2 pontoon boats, and 2 paddle boats.

C. YEAR THREE

1. Construct boat sales showroom.

2. Construct 4 additional rental room units.

3. Add 20 additional new boat slips.

D. YEAR FOUR

1. Add 10 additional full hook-up campsites.

E. YEAR FIVE

1. Add 10 additional full hook-up campsites.
2. Add 20 additional new boatslips.
3. Begin preparation of area for new rental room units.

DACW43-1-95-17

# PRELIMINARY ASSESSMENT SCREENING (PAS)

1. REAL PROPERTY TRANSACTION: Lease of the Former Fox Harbor Marina Site, Lake Shelbyville, Illinois for Development of a Marina and Related Recreational Facilities.

2. GOVERNMENT LAND USE: Flood control.

3. PRELIMINARY ASSESSMENT SCREENING (PAS) was performed in accordance with CERCLA requirements for the subject property. The purpose of the PAS was to determine if hazardous substances were stored, released into the environment or structures, or disposed of on the subject site while the property has been owned by the Federal Government. In performing the assessment, sufficient information was developed to adequately assess the health and safety risks, define the nature, magnitude, and extent of any environmental contamination, and potential liabilities associated with the subject property transaction. The property assessment included a review of the following:

a. Past Government Property Uses

b. Area maps - USGS, Corps, Aerials

c. Interviews

d. Site visit

4. STATEMENT OF FINDINGS: Based on the PAS it has been determined, in accordance with regulations issued by the Environmental Protection Agency in 40 CFR part 373, that there is no evidence to indicate that hazardous substance releases have occurred during the time the government has owned subject property that will be affected by the transaction.

Signed: [signature] Date: 2/24/95
Theodore S. Postol, P.E.
Chief, Environmental Quality Section
Hydrologic & Hydraulics Branch

Signed: [signature] Date: 2/27/95
Frank E. Catalano
Environmental Compliance Coordinator
Natural Resource Management Branch

EXHIBIT"D"

Item 4. Clean Water Act Compliance.

a. The Corps of Engineers plans to install a new lift station, a 4-inch pressure sewer from the lift station to an existing lift station at Sullivan Beach Access Area with associated air release/air vacuum valve, pressure gage and valve chambers, lake crossing with HDPE pipe and a 6-inch gravity sewerline. After the new system is completed, the existing wastewater treatment plant will be demolished and area backfilled up to the contours of the surrounding ground.

b. The boat pumpout, restaurant pump station, pump station near the shore line, the associated pressure sewer line connecting the systems and the underground pressure sewer line on shore going to the existing treatment plant are not in compliance with Illinois Environmental Protection Association (IEPA) Regulations and will need upgrading and required permits before the system is used or will pass inspection.

c. Abandoned sewer lines. Two abandoned sewer lines exist - one from a former service station near the entrance to the site and one from a mobile home that was behind the service station area. The service station line runs to the trailer dump station and the mobile home line is connected to the service station line. The Corps of Engineers will cut off line at the trailer dump station and grout the ends.

Item 12. Resource Conservation and Recovery Act Compliance.

a. Marina fuel supply. Three underground storage tanks (USTs) - 2, 6000 gallon gasoline and 1, 1000 gallon premix - that serviced the marina were removed in September 1994. The tanks were removed in accordance with the Illinois State Fire Marshal and IEPA regulations. The soil in the USTs excavated pit wall and bottom were tested and the results showed no contamination of the soil. The two fuel lines from the USTs to the marina pumps were upgraded in 1992 with double wall fiberglass piping and Veeder Root ILS-250 interstitial monitor for leak detection.

The enclosed photographs show the fuel lines and pressure sewer line that are in the excavated UST pit.

b. Abandoned Service Station. Two USTs - 1, 6000 gallon and 1, 4000 gallon - near the site entrance from a former service station were removed in September 1994. Soil testing results showed no contamination of the site from the USTs. All USTs closure reports required by the IEPA for the USTs is the responsibility of the Corps of Engineers.

c. Waste Oil. Waste oil was generated on site in a former boat and engine repair shop. The waste oil has been transport off site and legally disposed by the Corps of Engineers.

DACW43-1-95-17

PRELIMINARY ASSESSMENT SCREENING (PAS)
OF NEPA, CERCLA AND 15 ENVIRONMENTAL ACTS
RELATIVE TO LANDS DESCRIBED BELOW:

Lease of the Former Fox Harbor Marina Site, Lake Shelbyville, Illinois for Development of a Marina and Related Recreational Facilities.

15 ENVIRONMENTAL ACTS

1. National Historic Preservation Act, 16 USC 470 et seq.;
2. Coastal Zone Management Act, 16 USC 1451 et seq.;
3. Endangered Species Act, 16 USC 1536 et seq.;
4. Clean Water Act, 33 USC 1251 et seq.; including the Section 404 wetlands permitting process and Section 311;
5. Wild and Scenic Rivers Act, 16 USC 1271 et seq.;
6. Clean Air Act, 42 USC 7401 et seq.;
7. Antiquities Act, 16 USC 431 et seq.;
8. Archaeological and Historic Preservation Act, 16 USC 469;
9. American Indian Religious Freedom Act, 16 USC 1996;
10. Archaeological Resources Protection Act, 16 USC 470aa-11;
11. Toxic Substances Control Act, 15 USC 2601;
12. Solid waste Disposal Act, 42 USC 6901, (Also known as the Resource Conservation and Recovery Act (RCRA));
13. Federal Insecticide, Fungicide, and Rodenticide Act, 7 USC 135;
14. Executive Order 11990; Protection of Wetlands;
15. Executive Order 11988 as amended by Executive Order 12148, Floodplain Management.

*****************************************************************

I hereby certify clearance for CERCLA and for items 6, 11, 12, and 13 of the attached 15 environmental acts. For item 4-Clean Water Act, item 12-Resource Conservation and Recovery Act see attached comments.

[signature] 2/24/95

Theodore S. Postol — Date
CELMS-ED-HQ

*****************************************************************

I hereby certify clearance for NEPA and for items 1, 2, 3, 5, 7, 8, 9, 10, and 15 of the attached 15 environmental acts.

Daniel V. Ragland [signature] 2-27-95

Daniel V. Ragland — Date
CELMS-PD-AE

*****************************************************************

I hereby certify clearance for items 4 and 14 of the attached 15 environmental acts.

Michael A. Brazier [signature] 2/24/95

Michael A. Brazier — Date
CELMS-CO-F

*****************************************************************

I hereby certify environmental compliance.

[signature] 2/27/95

Frank E. Catalano — Date
CELMS-CO-N
Environmental Compliance Coordinator

# MARINA UNDERGROUND STORAGE TANK PIT




Figure 1. Pressure sewer line in east wall of pit going to the existing treatment plant and fuel lines.




Figure 2. Pressure sewer line shown on left entering north wall of pit.

# MARINA UNDERGROUND STORAGE TANK PIT




Figure 3. Gasoline fuel line (east wall) that connected to 2-6,000 gallon USTs. Pressure sewer line located directly below this line.




Figure 4. Premix fuel line (south wall) that was connected to the 1,000 gallon premix UST.